**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thomas R. BRIMBERRY, Defendant-Appellant.**

**No. 83–2236.**

United States Court of Appeals, Seventh Circuit.

Argued March 28, 1984.

Decided Sept. 18, 1984.

---

**7.** Defendant's other contentions merit no discussion.

Clifford J. Proud, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

David P. Schippers, Chicago, Ill., for defendant-appellant.

Before WOOD, CUDAHY, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This is an appeal from the defendant's convictions on two counts of obstruction of justice. For the reasons set forth below, we remand the case to the trial court for an evidentiary hearing.

In February 1981, the Criminal Investigation Division of the Internal Revenue Service (IRS) began an investigation of the defendant and his wife for possible tax evasion during the years 1977 through 1980. During this period, the defendant was employed by Stix & Company, a St. Louis brokerage firm. Both this IRS investigation and a federal grand jury investigation, which began in the Southern District of Illinois in July 1981, revealed the identity of a number of individuals who were involved in the defendant's financial activities. These individuals, as well as the defendant and his wife, were interviewed by IRS agents on October 21, 1981, and the agents served several subpoenas for Stix business records.

On November 2, 1981, the defendant and the government entered into a plea agreement that allowed the defendant to plead guilty to a single tax felony count in exchange for his cooperation in the investigation of Stix affairs. Thereafter, the defendant informed the government agents of an intricate financial scheme through which millions of dollars had been diverted from Stix. The defendant also led the agents to Stix records that he said were in danger of being destroyed by a business associate. In addition, the defendant testified about the Stix fraud before representatives of the Securities and Exchange Commission (SEC) and before a grand jury in the Eastern District of Missouri.

The Missouri grand jury returned indictments against five of the other participants in the Stix fraud, including Jerry Maeras and Arthur Miller Jr. After entering into plea agreements with the government in the fall of 1982, Maeras and Miller explained the details of the Stix fraud scheme. They also revealed that, during the government investigation, the defendant had told them to destroy Stix records. On the basis of this information, the defendant was indicted for obstruction of justice.

At the defendant's trial, Miller testified that on October 21, 1981, after he was visited by IRS agents, the defendant told him to burn all his records so that the IRS would have a hard time "trying to put everything together." Trial Tr. Vol. IV at 86. Miller said that he followed the defendant's instruction. Miller also testified that, during the second week in November 1981, the defendant called Miller and asked him if he had burned his records. When Miller replied that he had, the defendant told Miller to make sure that Maeras had done the same. A family friend of Miller, Sherry Lisson, testified that the defendant called her in April 1982 and asked her to go into Miller's house to retrieve any records involving Stix. Lisson recounted that the defendant called again a short time after this conversation and asked if she had found any records in Miller's house. Although Lisson had not looked for the records, she told the defendant that she had not found any.

Maeras took the stand at the defendant's trial and stated that, during the second week in November 1981, the defendant called and told him to burn his Stix records. A few minutes after this call, the defendant called Maeras again and said that if Maeras did not burn his records, "there would be a blood trail." Trial Tr. Vol. III at 52. Maeras did not destroy his records.

The government also presented evidence at trial regarding the disbursement of proceeds from the Stix fraud. Government agent John Brissman testified, with the aid of a prepared chart, that 2.8 million dollars

of the proceeds could not be accounted for. Through this testimony, the government sought to establish a motive for the defendant's alleged attempts to obstruct justice.

The jury returned a verdict of guilty on two counts of obstructing justice.[1] In appealing this verdict, the defendant argues that the trial court erred in failing to dismiss the first count of the indictment, which concerned the defendant's communications regarding the destruction of Miller's records. Furthermore, the defendant contends that the evidence used to convict the defendant was derived from the information that the defendant had given the government pursuant to his plea agreement. According to the defendant, the use immunity prescribed by the plea agreement prohibited the government from using this information in a criminal prosecution of the defendant. Finally, the defendant maintains that the entire prosecution constituted a breach of the plea agreement.

### Failure to Dismiss Count I

The defendant contends that the district court erred in refusing to dismiss Count I of the indictment, which alleges that the defendant obstructed justice by telling Miller to destroy his Stix records. The defendant points out that Miller testified that he burned his records, at the defendant's bidding, on October 21, 1981. According to the defendant, this testimony indicates that the alleged obstruction of justice had been completed before the November 2 plea agreement was signed, and the agreement bars prosecution of this prior crime. The government replies that the endeavor to obstruct justice by destroying Miller's records continued beyond October 21 and involved follow-up phone calls to Miller and to Lisson in order to determine whether Miller had destroyed all his records. The government maintains that the burning of records on October 21, 1981, is not important to the determination that the defendant still endeavored to bring about the destruction of evidence after this date.

The crime of obstruction of justice is described in 18 U.S.C. § 1503 (1982), in relevant part, as "corruptly, or by threats or force, or by any threatening letter or communication, ... endeavor[ing] to influence, obstruct, or impede the due administration of justice ...." This court recently interpreted this statute in *United States v. Berardi*, 675 F.2d 894 (7th Cir.1982), where the defendant argued that a count alleging obstruction of justice was duplicitous because it described three episodes in which the defendant was alleged to have furthered his endeavor to influence a witness to testify falsely before the grand jury. This court rejected the defendant's argument, ruling that the statute contemplates "a continuing course of conduct" and that the government's characterization of the facts as a single continuing offense was fair, given that the three alleged acts of obstruction occurred within a relatively short period of time, were committed by one defendant, involved a single witness, and were in furtherance of the defendant's object of influencing the witness not to reveal information to the grand jury.

In the present case, the defendant attempted to influence Miller to destroy records by directing Miller to burn the records in October 1981, by calling Miller in November to ascertain whether the records had in fact been destroyed, and by calling Lisson twice in April 1982 in an attempt to have Lisson remove from Miller's house any records that had not been destroyed. We find that these separate actions of the defendant were in furtherance of the sole object of destroying all Stix records in Miller's possession, and, as in *Berardi*, these actions constituted a continuing course of conduct. Furthermore, the impossibility of accomplishing the goal of an obstruction of justice does not prevent a prosecution for the endeavor to accomplish the goal. *Osborn v. United States*, 385 U.S. 323, 333, 87 S.Ct. 429, 435, 17 L.Ed.2d 394 (1966) (where defendant allegedly employed in-

---

1. The jury acquitted the defendant on an additional obstruction count, which had alleged that the defendant instructed Miller to conceal the involvement of Duane Skinner, the defendant's accountant, in the Stix fraud.

former to contact prospective juror, fact that informer never intended to carry out scheme did not preclude defendant's conviction, under 18 U.S.C. § 1503, for endeavoring to bribe juror). Thus, the destruction of Miller's records on October 21 has no bearing on the prosecution of the defendant for continuing his endeavors, after November 2, to have all of Miller's records destroyed. We therefore conclude that the trial court did not err in refusing to dismiss Count I of the indictment.

### Admissibility of Evidence

It is the defendant's position that the trial testimony of Brissman and another government agent, James Wehrheim, was based solely on information that the defendant had given under the plea agreement. According to the defendant, since the agreement provided that the defendant's statements to government agents would not be used against him in a criminal prosecution, the trial court committed reversible error in admitting this information into evidence. The government, however, contends that the defendant has waived this argument because the defense counsel never objected to the admission of this information. Indeed, the government tells us that the defendant introduced much of this information during the trial, but withdrew it prior to the deliberations of the jury.

In *United States v. Keilly*, 445 F.2d 1285 (2d Cir.1971), *cert. denied*, 406 U.S. 962, 92 S.Ct. 2064, 32 L.Ed.2d 350 (1972), the defendant argued that the federal prosecutor violated the dictates of *Murphy v. Waterfront Commission of New York Harbor*, 378 U.S. 52, 79, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964), by using the fruits of the defendant's immunized state grand jury testimony in connection with the defendant's federal criminal prosecution for

bribery. The Second Circuit noted, however, that during the trial, the defense attorney expressly stated that there was no objection to the admission into evidence of documents that allegedly had been obtained through the defendant's grand jury testimony. In fact, many of these documents had been offered into evidence by the defense counsel. The court thus ruled that the defendant had not preserved the issue for appeal and that the defendant's claim of error would not be available unless the admission of the documents was plain error. The court further ruled that, in light of the defense attorney's acquiescence in the admission of the documents, the trial court's failure to exclude the documentary evidence on its own motion was not plain error. *See also United States v. McDonnel*, 550 F.2d 1010 (5th Cir.) (where defendant did not object during trial to testimony that arguably violated statutory provision dealing with use immunity for bankrupts, defendant did not demonstrate that plain error was committed), *cert. denied*, 434 U.S. 835, 98 S.Ct. 123, 54 L.Ed.2d 96 (1977).

■ The defense attorney in the present case did not make an objection that the testimony of Brissman and Wehrheim was derived from the defendant's post-plea agreement immunized statements. In fact, the defense counsel stated, at an *in camera* conference, that he would not object to the use of statements that the defendant gave government agents after the plea agreement was signed. Trial Tr.Vol. II at 20.[2] Accordingly, the defense counsel thoroughly cross-examined Wehrheim about the extent of the defendant's cooperation with the government. Furthermore, the defense counsel offered into evidence the defendant's SEC and grand jury testimony, as well as FBI telephone logs that the defendant kept while he was assisting the

**2.** During this *in camera* conference, the defense counsel objected to the use of the defendant's pre-plea agreement statements that his tax filings were accurate. The defense counsel pointed out that if such statements could be shown to be false, the defendant would have been lying to federal agents, a crime for which he was im-

munized by the plea agreement that he later signed. The trial court correctly overruled the defense counsel's objection, pointing out that the government could use these statements to lay a foundation for crimes that the defendant committed after he entered into the plea agreement. *See* Trial Tr.Vol. II at 21–22.

government investigation. Although the defense counsel withdrew this evidence prior to jury deliberations, he used his closing argument to refer to the defendant's cooperation and to point out that a man who had revealed so much information pursuant to a plea agreement would have had no motive to obstruct justice.

 In the absence of any objection raised at trial to the use of the defendant's post-plea agreement statements, we must determine, under the plain error standard, whether the trial court's admission of this evidence was a conspicuous error that was so likely to have changed the result that a retrial is necessary to avoid a miscarriage of justice. *See United States v. Silverstein*, 732 F.2d 1338 at 1348 (7th Cir.1984). The record reflects that Brissman, during his testimony, utilized a chart that was compiled from many documents, most of which had been subpoenaed before the defendant entered the plea agreement.[3] In addition, Brissman stated that his investigation into documents was "quite separate and apart" from the interviews of the defendant that the government conducted pursuant to the plea agreement. Trial Tr. Vol. V at 26. From this record, it is not clear that Brissman's testimony was derived from the defendant's post-plea agreement statements. Furthermore, even if this testimony was derived from the defendant's statements, the record suggests that many of these statements had been put in evidence by the defense. Thus, we conclude that any error in admitting this testimony was not conspicuous. Moreover, our review of the record satisfies us that Wehrheim's direct testimony regarding the defendant's cooperation with the government was cumulative of the defendant's statements that the defense counsel introduced through his cross-examination of Wehrheim and Brissman, and thus any error in admitting Wehrheim's direct testimony was not likely to have changed the result of the trial. We therefore hold that the admission of both Wehrheim's and Brissman's direct testimony did not constitute plain error.[4]

### Breach of Plea Agreement

At oral argument, the defendant contended that, even if we find that he waived his argument regarding the admissibility of government testimony, we must find that the government brought the entire prosecution in bad faith. The defendant asserted at oral argument that the government's charges of obstruction of justice arose from statements made by Miller and Maeras when they entered into plea agreements with the government. According to the defendant, neither Miller nor Maeras would have plea bargained with the government if the defendant had not cooperated by revealing the intricate details of the Stix

---

**3.** Brissman testified that the documents used in preparing the chart included monthly statements of Brimberry-controlled Stix accounts, and checking account records for Rimco, Maeras Enterprises, and the J.A. Miller account. Trial Tr.Vol. V at 9. Earlier in the trial, Wehrheim had indicated that these records had been the subject of grand jury subpoenas issued prior to the November 2 plea agreement. Trial Tr.Vol. II at 9–10, 13–16.

It is significant that, when the defense counsel asked Brissman if he used records that had been furnished to the government by the defendant, Brissman replied that the records were made available to him by the IRS and that he was not aware of how they were obtained.

**4.** In his brief, the defendant argues that, in order to have been admissible, the testimony of Brissman and Wehrheim had to have been derived from a source totally independent from

the defendant's statements. The government, on the other hand, maintains that this stringent standard put forth in *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), is inapplicable where the defendant voluntarily enters into a plea agreement and where his statements thus are not compelled. The government contends that, when such a voluntary agreement has been entered, the government need only demonstrate that its evidence is not "fruit of the poisonous tree," a standard that may be satisfied by simply showing that the evidence inevitably would have been gained even without the defendant's statements.

We need not resolve this dispute, for we find that under either standard, the trial court did not commit plain error by admitting the defendant's post-plea agreement statements, in light of the defense counsel's efforts to put these statements before the jury.

fraud.[5] Thus, the argument is that the defendant's prosecution was a direct result of information provided by the defendant, and under paragraph 7 of the defendant's plea agreement, this prosecution is subject to dismissal as a bad faith prosecution. In his brief, the defendant further argues that the plea agreement constituted a promise of immunity from prosecution and that, under the contractual analysis of *Rowe v. Griffin*, 676 F.2d 524 (11th Cir.1982), the prosecutors breached their promise by bringing a subsequent prosecution that is directly related to the Stix fraud. In response to both of the defendant's arguments, the government maintains that the defendant has waived any right to complain about government use of information provided by the defendant. In the alternative, the government contends that the defendant breached the agreement by not cooperating fully with the government when he told Miller and Maeras to destroy evidence and that his breach allowed the government to prosecute him for obstruction of justice.

■ To compel testimony that otherwise would be privileged by the fifth amendment, the Constitution requires only a grant of use immunity, whereby neither the compelled testimony nor evidence derived from it may be used in future prosecutions of the defendant. *Kastigar v. United States*, 406 U.S. 441, 458–59, 92 S.Ct. 1653, 1663–64, 32 L.Ed.2d 212 (1972). However, in order to secure the cooperation of a defendant, a prosecutor may promise the defendant complete immunity from prosecution. *Rowe v. Griffin*, 676 F.2d at 527.[6] In the present case, the prosecutors agreed to grant the defendant immunity from prosecution for all offenses that they discovered as a direct or indirect

result of the defendant's statements. *See* Agreement dated November 2, 1981, at paragraph 7 (parties agree that if government initiates prosecution that resulted directly or indirectly from defendant's statements, prosecution is assumed to be in bad faith). In return, the defendant agreed to cooperate with the government "by providing testimony and assistance to the United States in any trial of any cause arising in part or in whole from [his] testimony before the grand juries, or otherwise." *Id.* at paragraph 5.

■ Where a defendant contends that his or her prosecution is precluded by a grant of immunity, a motion to dismiss the indictment is the proper method of raising the issue. *See United States v. McDaniel*, 449 F.2d 832, 835 (8th Cir.1971), *cert. denied*, 405 U.S. 992, 92 S.Ct. 1264, 31 L.Ed.2d 460 (1972). However, the proper time for making this motion is unclear. Under the advisory committee note to Rule 12(b) of the Federal Rules of Criminal Procedure, immunity has been listed along with double jeopardy and the statute of limitations in the group of objections and defenses that a defendant may raise before trial but that will not be waived if the defendant fails to raise them at that time. Fed.R.Crim.P. 12(b) (advisory committee note to original rule 12(b)(2)). Although rule 12(b) does not specify when most of the defenses in this group must be presented, several commentators have taken the view that these defenses are waived if not raised at trial. 8 J. Moore, Moore's Federal Practice ¶ 12.02[1] (2d ed. 1983); 1 C. Wright, Federal Practice and Procedure § 193 (2d ed. 1982). This view is based on the fact that these defenses are capable of determination without the trial on the merits. As this court has stated when ruling

---

**5.** The defendant refers us to *United States v. Kurzer*, 534 F.2d 511 (2d Cir.1976), where, as in the case before us, the identity of the government witness was known to the government before the defendant began cooperating. The issue then became the extent to which the witness's decision to testify resulted from the defendant's statements implicating the witness.

**6.** The Eleventh Circuit ruled that the government must honor such an agreement when it appears from the record that: "(1) an agreement was made; (2) the defendant has performed on his side; and (3) the subsequent prosecution is directly related to offenses in which the defendant, pursuant to the agreement, either assisted with the investigation or testified for the government." *Rowe v. Griffin*, 676 F.2d at 527–28.

that the double jeopardy defense is waived if not raised at trial, "the [t]rial [j]udge should be alerted to the possible superfluity of the impending trial so that if the claim prove[s] to have merit the time and effort of a trial might [be] saved." *United States v. Buonomo*, 441 F.2d 922, 924–25 (7th Cir.), *cert. denied*, 404 U.S. 845, 92 S.Ct. 146, 30 L.Ed.2d 81 (1971). We find this reasoning persuasive and applicable in the context of immunity defenses.

■ The record in the present case reveals that, prior to trial, the defendant moved to dismiss Count I of the indictment on the sole ground that the destruction of Miller's records took place prior to the signing of the plea agreement and that the agreement immunized the defendant from prosecution for this prior act.[7] The defendant did not argue to the trial court, as he now argues before us, that since the prosecutions for obstruction of justice were based on information conveyed by Miller and Maeras, they were the indirect result of the defendant's implication of Miller and Maeras during his cooperation with the government and were thus barred by the plea agreement. If the defendant had voiced this claim at the trial level, the government would have been required to prove that Miller and Maeras would have testified against the defendant because of the case that the government had developed against them entirely apart from the defendant's information. *See United States v. Kurzer*, 534 F.2d 511, 517 (2d Cir.1976). The need for a district court proceeding in order to present evidence on this point demonstrates the importance of raising immunity issues at trial, and we conclude that the defendant's failure to argue at trial that the obstruction prosecution indirectly resulted from the defendant's immunized statements constituted a waiver of this issue.

■ The question remains, however, whether the trial court committed plain error in failing to require, *sua sponte*, that

the prosecutors show that the obstruction prosecution did not result, directly or indirectly, from the defendant's cooperation with the government. It is clear, from the record in this case, that the defendant presented the trial court with the entire plea agreement when he filed his pretrial motion to dismiss Count I. It is also clear beyond question that, in our system of justice, "[a]ny agreement made by the government must be scrupulously performed and kept." *United States v. Lyons*, 670 F.2d 77, 80 (7th Cir.), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). *See also Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) ("when a plea rests in any significant degree on a promise or agreement of the prosecutor, ... such promise must be fulfilled"). We therefore find, under the facts of this case, that the trial court's failure to satisfy itself that the government's prosecution of the defendant did not violate paragraph 7 of the plea agreement constituted a "conspicuous" error. *See United States v. Silverstein*, at 1349. Furthermore, given the strict showing that the government must make to demonstrate that Miller's and Maeras's testimony was obtained independently of the defendant's cooperation, *see United States v. Kurzer*, 534 F.2d at 517, 518, *on remand*, 422 F.Supp. 487, 489–90 (S.D. N.Y.1976), we find that an evidentiary hearing on this point is necessary to avoid a miscarriage of justice. *See United States v. Silverstein*, at 1349.

Accordingly, we remand this case with instructions to the trial court to hold a hearing at which the government must prove that Miller and Maeras would have testified against the defendant because of the case the government had developed against them entirely apart from the defendant's information. If the trial court finds in the government's favor on this point, the defendant's conviction shall stand. If, on the other hand, the govern-

---

**7.** The defendant also made a pretrial motion to dismiss all counts, not on the basis of immunity, but on the basis of vagueness.

ment fails in its proof, the trial court must assess the government's two-prong contention that the defendant breached the plea agreement and that such a breach allowed the government to prosecute the defendant for obstruction of justice. *Cf. United States v. Stirling*, 571 F.2d 708, 730–32 (2d Cir.) (applying "breach" clause of cooperation agreement), *cert. denied*, 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978). If the court resolves these issues against the government, the indictment must be dismissed.