**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Musa "Moses" SWEISS,
Defendant-Appellant.**

No. 85–2568.

United States Court of Appeals,
Seventh Circuit.

Argued April 1, 1986.

Decided Sept. 5, 1986 *.

Reheard Feb. 18, 1987.

Decided March 18, 1987.

Rehearing and Rehearing En Banc
Denied April 28, 1987.

* The original panel opinion, reported at 800 F.2d 684 (7th Cir.1986), is hereby vacated.

Raymond J. Smith, Burke & Smith Chartered, Chicago, Ill., for defendant-appellant.

Ruben Castillo, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, FLAUM and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

Musa "Moses" Sweiss was the manager and part owner of a Super Low grocery store in Chicago, Illinois. Sweiss was convicted of conspiring to destroy a competing grocery store and of attempting to obstruct the government's investigation of that crime. Sweiss appeals the district court's refusal to allow the jury to hear the first of two tape-recorded conversations between the defendant and one of the main prosecution witnesses. After examining the transcript of the conversation, we conclude that because of a decision made by defendant's counsel as to trial strategy, the district court did not abuse its discretion in refusing to admit the conversation at the time it was offered. We therefore affirm the district court's holding.[1]

## I.

Moses Sweiss was indicted in September, 1984, on charges that he conspired with Bassam Faraj to commit arson and aided and abetted an attempted arson. Moses Sweiss was also indicted for assisting Bassam Faraj in his plans to flee the jurisdiction of the United States and for attempting to persuade a grand jury witness to retract or change his testimony against Sweiss. Moses Sweiss' defense at trial was that he was "framed" in order to "take the fall" for the true instigator of the conspiracy, his "millionaire uncle," Michael Sweiss, who was the controlling partner of the Super Low grocery store that Moses Sweiss operated.

Faraj, who was working as a butcher at the Super Low, asked a frequent customer by the name of William Franklin to "torch the One Stop" supermarket. That same day Franklin contacted the Chicago Police Department Bomb and Arson Hotline and told them that Faraj had offered him $1,500 to burn down the One Stop. Agents of the Department of Alcohol, Tobacco and Firearms ("ATF") outfitted Franklin with a hidden recording device that was then used to tape nine conversations that detailed Faraj's plans to destroy the One Stop. During Faraj's conversations with Franklin, Faraj never revealed the name of the person who had hired him, but referred to that person as "the man," "my uncle," and "one of my uncles." On one occasion, when Franklin walked into the Super Low, he saw Faraj speaking to Moses Sweiss. Faraj later said to Franklin that, "Man, I was inside, you know, talking to the man."

Faraj was arrested on May 3, 1984, and after hearing the tape-recorded conversations between himself and Franklin, Faraj named Moses Sweiss as the person for whom he was working. Faraj remained in custody until several members of the Sweiss family, including Moses Sweiss, posted a $15,000 cash bond. Three months later, Faraj called an ATF agent and told him that he wanted to talk to the government about Moses Sweiss. Faraj then agreed to wear a hidden recording device, and secretly recorded two conversations that Moses Sweiss was involved in, one on August 14, 1984, and the other on September 10, 1984. Faraj became a trial witness for the government.

The government introduced a transcript of the September conversation into evidence at Moses Sweiss' trial; however, the district court refused to admit a transcript of the August conversation which was offered by the defense after the prosecution rested its case. Both conversations were in Arabic. Both parties stipulated to the use of an English translation of the September conversation. During the September conversation, Faraj and Moses discussed how Faraj could flee to Mexico and how Faraj

---

**1.** Based on additional argument at rehearing, and a reexamination of the trial record, our original opinion is withdrawn, although our previous determination that the trial court did not abuse its discretion is reaffirmed.

had been solicited to bomb the One Stop grocery store. Although Sweiss did not say anything in the conversation that directly incriminated himself, the government argued to the jury that his statements implicated him in the crime.

In his opening and rebuttal arguments the prosecutor stressed the importance of the September conversation. He told the jury that "the big evidence against Moses Sweiss is his own words" from the September tape. The prosecutor argued that the September conversation showed that: (1) Moses Sweiss had solicited Faraj to commit the arson; (2) by implication Sweiss admitted that the solicitation conversation occurred; and (3) because Sweiss knew the details of Faraj's plans to flee the country he was a participant in those plans. The government also argued that an individual named Adnan [Eddie] Al-Abbasi had witnessed the solicitation conversation. Abbasi was a key government witness. His testimony fully corroborated Faraj's and Franklin's testimony. Moreover, Abbasi testified that he witnessed Sweiss' offer of $5,000 to Faraj to destroy the One Stop. Abbasi also testified as to another conversation with Sweiss concerning the destruction of the One Stop.

The defense argues that the conversation recorded on August 14, 1984, shows that these contentions are not true. First, the defense argues that when Faraj initially told Sweiss during the August conversation that "everyone," including his "lawyer and all the Arabs," were pressuring him to name Moses Sweiss as the one who solicited Faraj to commit the arson, Sweiss clearly was shocked and strongly denied any involvement. Second, the defendant protests the prosecution's assertion that in the September conversation when Faraj mentioned a witness who would corroborate the solicitation conversation and Sweiss responded, "Do you mean Adnan?" (referring to Eddie Al-Abbasi's formal name) that this meant Sweiss knew of a witness. The defense argues that it was Faraj who volunteered Eddie as the corroborating witness, and that when he did, Sweiss did not know whom Faraj was talking about. The defense also argues that in

the August tape-recorded conversation, when Faraj first told Sweiss he would say there was a solicitation conversation, Sweiss strongly denied that such a conversation had occurred. Finally, the defense argues that in the September conversation Sweiss had knowledge of Faraj's plans to flee the country only because Faraj had told Sweiss of his travel plans during the August conversation. Sweiss' defense was, therefore, partly based on a theory that the information concerning the bombing solicitation, and the escape that he discussed in the September conversation, were told to him by Faraj during the August conversation.

After the trial, the jury returned a verdict finding defendant Sweiss guilty on all four counts charged in the superseding indictment. Sweiss filed a motion for a new trial. The motion was denied and the court sentenced Sweiss to concurrent three year sentences on Counts I, II, and III, and five years probation on Count IV. The court also imposed a three thousand dollar fine. Thereafter, defendant Sweiss filed a timely notice of appeal.

## II.

On appeal, the defendant contends that the first transcript was admissible because the August 14th conversation contained therein: (1) was not hearsay; (2) was a prior consistent statement; (3) fell within the "state of mind" hearsay exception; (4) fell within the "residual" hearsay exception; or (5) was admissible in the interests of justice and the rule of completeness. We need not decide whether the August tape was admissible, because even if it was, the trial court, on this record, did not abuse its discretion in excluding it.

## A.

■ We must first discuss the government's claim in this court that all of Sweiss' arguments are raised for the first time on appeal. As we said in *United States v. Carter*, 720 F.2d 941, 945 (7th Cir.1983) (citations omitted):

it is a well-established general proposition that a litigant cannot present to this court as a ground for reversal an issue which was not presented to the trial court and which it, therefore, had no opportunity to decide.

Federal Rule of Evidence 103(a)(2) sets forth the steps which must be taken by a party to preserve for review a question concerning the erroneous exclusion of evidence. 21 C. Wright & K. Graham, *Federal Practice and Procedure* § 5040 at 208 (1977). The rule provides that error may be predicated upon a ruling excluding evidence if "a substantial right of the party is affected ... [and] the substance of the evidence was made known to the court by offer or was apparent for the context within which questions were asked." Fed.R. Civ.P. 103(a)(2). To preserve an objection, Rule 103(a)(2) does not require that a formal offer of proof be made, or that the grounds of error be precisely specified; instead, it is sufficient if "the record shows, either from the form of the question asked, or otherwise, what the substance of the proposed evidence is," *United States v. Alden*, 476 F.2d 378, 381 (7th Cir.1973) (citation omitted); *see also United States v. Gonzalez*, 700 F.2d 196, 201 (5th Cir.1983); *Waltzer v. Transidyne General Corp.*, 697 F.2d 130, 134 (6th Cir.1983).

The government's claim that none of the arguments raised by the defendant in this appeal were presented to the district court is simply inaccurate. Our review of the record shows that every hearsay issue asserted by the defendant on appeal was sufficiently, though not perfectly, presented to the district court and was ruled on by the district court. We need not address these hearsay claims, however, because we conclude that the district court did not abuse its discretion in denying the August conversation admission.

The defendant also preserved for appeal the issue of whether the district court was required to admit the August tape recording under the rule of completeness. However, we hold that the defendant did not establish a sufficient foundation at trial to require the district court to admit the Au-

gust tape. Therefore, the trial court did not abuse its discretion in refusing to admit the August conversation.

### B.

#### 1.

The defendant argues that the tape recording of the August 14, 1984 conversation should have been admitted to explain his later statements recorded in September. He argues that the complete truth could only have been ascertained if both tapes had been played to the jury. This is particularly crucial, the defendant argues, because of the importance the prosecution placed on specific statements made in the September conversation.

■ Federal Rule of Evidence 106 codifies the common law rule of completeness:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

"This rule is circumscribed by two qualifications. The portions sought to be admitted (1) must be relevant to the issues and (2) only those parts which qualify or explain the subject matter of the portion offered by the opponent need be admitted." *United States v. Walker*, 652 F.2d 708, 710 (7th Cir.1981) (en banc) (*citing United States v. McCorkle*, 511 F.2d 482, 486–87 (7th Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 43, 46 L.Ed.2d 43 (1975). The Second Circuit in *United States v. Marin*, 669 F.2d 73, 82–83 (2d Cir.1982), and the Third Circuit in *United States v. Soures*, 736 F.2d 87, 91 (3d Cir.1984), *cert. denied*, 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985), have both adopted and amplified the test we articulated in *Walker*. Under the doctrine of completeness, another writing or tape recording is "required to be read [or heard] if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impar-

tial understanding." *Soures,* 736 F.2d at 91 (*citing Marin,* 669 F.2d at 84).

In *Walker* the defendant was found guilty of extortion after a second trial (the first ended in a deadlocked jury). The defendant elected not to testify at his second trial, but portions of his testimony from the first trial were admitted into evidence during his second trial. The defendant argued on appeal that the trial judge violated Rule 106 by allowing the prosecution to introduce selected portions of the defendant's prior testimony while refusing to admit other relevant parts. We found that "substantial portions" of the excluded testimony were "relevant to specific elements of the Government's proof and explanatory of the excerpts already admitted." *Walker,* 652 F.2d at 711. In contrast to *Walker,* in this case, because the excluded conversation, although perhaps useful to the jury, was not *necessary to explain* evidence already admitted, Rule 106 was not implicated. Therefore, the trial court did not abuse its discretion in denying its admission.

### 2.

■ To lay a sufficient foundation at trial for a rule of completeness claim, the offeror need only specify the portion of the testimony that is relevant to the issue at trial and that qualifies or explains portions already admitted. *Walker,* 652 F.2d at 710. This is a minimal burden that can be met without unreasonable specificity. For example, in *United States v. Littwin,* 338 F.2d 141, 146 (6th Cir.1964), the defendant's counsel did not point out "what word, remark or phrase in that part of the tape which was played he would like to have explained or rebutted, or what part of the unplayed tape would be relevant or would throw light upon any word, phrase or remark which the jury had heard." The court concluded that the district court did not abuse its discretion in excluding the statements.

■ In this case, Sweiss' trial counsel did not argue that the August tape was admissible under the rule of completeness, nor did he even hint at this. After extensive questioning by the district court the defense counsel did not state what portions of the August tape explained the September tape. Furthermore, the defendant's counsel did not mention Federal Rule of Evidence 106, nor did he state any of the substance of the rule. In fact, even when directly asked, he was unable to give the court any case law on the point. Moreover, the nature of the August conversation was vague and rambling. Unless the conversation was heavily edited, its admission may well have confused the jury. Consequently, the trial counsel should have precisely delineated the relevant portions of the tape that he wished the jury to hear.

At the time that the defense offered the August tape for admission, the prosecution had not yet stated what it believed was the "key" evidence against Sweiss. However, after Sweiss' cross-examination it became clear that the prosecution was focusing on the portion of the September tape that demonstrated that Sweiss knew that Eddie Al-Abbasi was a corroborating witness. At that point, the defense could have offered portions of the August tape recording again because the defense counsel clearly knew what inference the government was arguing should be drawn from the September tape recording. Alternatively, the defense could have recalled Faraj, asked him what he said in the August conversation, and used the August tape recording to impeach him. But Sweiss' trial counsel chose not to follow either of these paths.

Furthermore, the prejudicial impact of the exclusion, if any, was diminished because, unlike *Walker,* the defendant in this case did take the stand and thus did have a chance to explain his statements. While on the stand, Sweiss did not refer to the August conversation. In addition, the defense did not examine the government's witnesses as to the August conversation. Thus, the defense failed to use its ample opportunity to refer to the relevant portions of the August conversation that allegedly corroborated Sweiss' story. The trial judge's refusal to admit the August tape, moreover, was without prejudice, so that the defendant could have offered the portions of the tape recording again when and if they be-

came relevant and explanatory.[2] The defendant, however, did not offer the tape again.

The August tape, if edited, may have aided the jury in understanding the September conversation. However, the defendant failed to lay a sufficient foundation for its admission under Federal Rule of Evidence 106. Moreover, because of the defense counsel's failure to make a focused and specific request outlining the relevant portions of the August conversation, the district court had discretion in refusing its admission. Therefore, the district court's refusal to admit the tape recording was not an abuse of discretion *when it was offered. See Walker*, 652 F.2d at 713.

### III.

Because the defense did not set forth a proper foundation for a rule of completeness claim, we hold that the trial court did not abuse its discretion in excluding the August tape recording when it was offered.[3] Sweiss' trial counsel did not specify the portions of the August tape recording that qualified or explained any portion of the September conversation. Only on appeal, with new counsel, does Sweiss allege that the August conversation was necessary to explain the September conversation. The defendant took the stand and was allowed to articulate his defense, but failed to refer to the August tape. The August tape recording may have buttressed Sweiss' credibility. The prejudicial impact of its exclusion, however, clearly did not rise to the level of an abuse of discretion.

AFFIRMED.

2. The record indicates that the judge held the prosecutor's objections up to particular scrutiny. The court's action was correct, because it ensured that the government did not select for trial strategy purposes half of the recordings that helped the prosecution, but then object on evidentiary grounds to the defendant's offer of the other half.

3. If the trial defense counsel fulfilled his obligation of delineating the relevant portions of the

August conversation, and if this material had been necessary to understand the September tape, we would then use a harmless error standard. However, even if the trial counsel had done this, and even if the August conversation had been necessary for the jury to understand the September conversation, we would have concluded that, in light of all of the other evidence in the record, such an exclusion, although error, was merely harmless.