**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Julio VELASCO and Felix Garcia–
Caban, Defendants–Appellants.**

Nos. 90–1461, 90–1462.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 17, 1991.

Decided Jan. 17, 1992.

Barry R. Elden, Asst. U.S. Atty., Jonathan G. Bunge (argued), Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Julio Velasco, pro se.

John A. Meyer, Chicago, for defendant-appellant Felix Garcia–Caban.

Before BAUER, Chief Judge, CUDAHY and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

During the time he was employed at the Wicker Park Auto Repair in Chicago, Illinois, Henry Olave was a man with a secret identity. For all the world to see, he was an auto mechanic; only a select group of people were aware that he was also a confidential informant for law enforcement officers. On November 30, 1988, while on the job at the garage, he happened to overhear a conversation between the shop's owner, Freddie Correa, and defendant Julio Velasco. The gist of the conversation was that Correa agreed to sell Velasco two kilograms of cocaine, which a third man by the name of Guillermo Reyes would deliver to Velasco at the garage that afternoon. Immediately, Olave the confidential informant went into action and called the authorities to report the conversation. As a result the auto repair shop was placed under surveillance.

Sure enough, later that afternoon Reyes, driving a red Nissan, showed up at the garage. Reyes spoke briefly with Olave, telling him he had a kilogram of cocaine for Velasco concealed in a booster cable box in his car. Shortly, Velasco arrived. He and Reyes walked over to the red Nissan, opened the front passenger door, looked inside, and then walked to the front of the garage. Velasco then got into a white Toronado and drove off. Reyes stayed at the garage.

Within minutes, the surveillance team saw Velasco arrive at a gas station at the corner of Division and Damen in Chicago. Velasco parked his car next to a car in which two men, defendant Felix Garcia–Caban and Sal Lopez, were sitting. All three men got out of their cars and walked to the front of Garcia–Caban's car. Garcia–Caban opened the hood of the car, a white Oldsmobile, and all looked inside. Then Velasco and Garcia–Caban got back into their cars and drove out of the gas station. Lopez stayed behind.

Velasco and Garcia–Caban were observed next, again within minutes, driving into the Wicker Park Auto Repair lot, Velasco's car in the lead. Velasco parked behind the red Nissan Reyes had driven into the lot earlier. When Garcia–Caban drove in, Velasco spoke to him briefly, and then Garcia–Caban parked next to the red Nissan. He released the trunk lid from within his car, after which Velasco removed the booster cable box from the red Nissan and placed it into Garcia–Caban's trunk. Only then did Garcia–Caban get out of his car and, with Velasco, look into the trunk.

After he closed the trunk, Garcia–Caban got back into his car and drove off the auto repair lot. The surveillance team followed him to the gas station where he had left Lopez, and arrested both men. In a search of Garcia–Caban's person, agents recovered a beeper and an address book containing Velasco's phone number. In a search of the trunk of his car, they recovered a booster cable box containing a 992.1 gram package of 90% pure cocaine. Later, agents also arrested Velasco, Reyes, and Correa. Garcia–Caban was advised of, and waived, his *Miranda* rights, after which he gave an oral, taped statement to the arresting officers detailing his involvement in the day's events.

In a nutshell, in his post-arrest statement Garcia–Caban said he was introduced to a man named "Angel" by a mutual acquaintance. Angel and Garcia–Caban had several meetings before November 30, 1988. During one of those meetings, Angel complained to Garcia–Caban that he had fronted thirty kilograms of cocaine to a Tony Gonzales, for which Gonzales was to pay him $400,000, but never did. And Angel now could not find Gonzales. Angel offered Garcia–Caban $10,000 if he could put Angel in touch with Gonzales. Fortuitously, on November 29, 1988, Sal Lopez introduced Garcia–Caban to Tony Gonzales at a local tavern. During that encounter, Garcia–Caban learned that Gonzales was interested in purchasing two and a half kilos of cocaine. Through Lopez, they made arrangements for Garcia–Caban to sell Gonzales cocaine the following day. Garcia–Caban contacted Angel on November 30, and Angel agreed to provide the cocaine for Garcia–Caban to sell to Gonzales. Angel instructed Garcia–Caban to go to the

gas station at Division and Damen, where a friend of Angel's would deliver the cocaine to him. Garcia–Caban did as he was told, and when Angel's friend arrived (who we now know is defendant Velasco), he did not have the cocaine with him. Instead, the friend led Garcia–Caban to the Wicker Park Auto Repair. Garcia–Caban then recounted the events as the surveillance team had witnessed them. He stated that when he and Angel's friend were looking at the booster cable box the friend had placed in the trunk of his car, the friend opened the box and showed Garcia–Caban that it contained a kilo of cocaine.

Agents asked Garcia–Caban what would have happened next had he and Lopez not been arrested at the gas station. Lopez, he told them, would have delivered the cocaine to Gonzales and gotten the money for it. For his role in this transaction, Garcia–Caban claimed he would have been paid only a nominal amount. But that wasn't the reason he set it up. His purpose was to bring Angel and Gonzales together, an act for which Angel had offered him $10,-000.

On February 22, 1989, a grand jury returned a two-count indictment against Garcia–Caban, Velasco, Lopez, Reyes, and Correa. Count one charged that the five had conspired to possess with the intent to distribute 992.1 grams of a mixture containing cocaine in violation of 21 U.S.C. § 846 (1988); count two charged them with distribution of 992.1 grams of a mixture containing cocaine within one thousand feet of an elementary school, in violation of 18 U.S.C. § 2 (1988) and 21 U.S.C. §§ 841(a)(1) and 845a (1988).

Approximately nine months after his arrest, Garcia–Caban made a proffer to the government after obtaining the government's promise that, except for impeachment purposes, nothing in the proffer would be used against him in the government's case. In his proffer, Garcia–Caban recanted his post-arrest story to the extent of the involvement of Lopez, which cast doubt on the involvement, or even existence, of either Angel or Gonzales. Shortly thereafter the government dismissed the charges against Lopez. Velasco, Reyes, and Correa remained players.

The trial of the remaining defendants was set for October 24, 1989. Just before jury selection, Reyes and Correa changed their pleas to guilty. Trial resumed on October 30, 1989, with only Garcia–Caban and Velasco as defendants. At the trial's conclusion, the jury found both defendants guilty on both counts. On February 16, 1990, the district judge sentenced Velasco to a term of 292 months imprisonment to be followed by eight years of supervised release. She sentenced Garcia–Caban on February 26, 1990, to a prison term of 262 months, also to be followed by eight years supervised release.

Garcia–Caban now appeals his conviction; Velasco appeals both his conviction and the computation of his sentence. As to Garcia–Caban, we affirm. As to Velasco, we affirm in part, reverse in part, and remand for resentencing. We address each in turn.

## I.

Garcia–Caban argues that the government used his proffer, in contravention of their agreement, when it sought to introduce a portion of his post-arrest statement at trial, and that the trial court erred when it failed to admit, under the rule of completeness, the remaining portions. The result, he contends, is that he was denied his due process right to a fair trial. He asks us to reverse and remand for a new trial. We decline.

## A.

■ Our courts take agreements between the government and a defendant very seriously. Indeed, we insist that the government scrupulously perform and keep any agreement it makes. *United States v. Brimberry*, 744 F.2d 580, 587 (7th Cir. 1984), *cert. denied*, 481 U.S. 1039, 107 S.Ct. 1977, 95 L.Ed.2d 817 (1987). Garcia–Caban maintains that the government violated its agreement not to use anything contained in

his proffer [1] against him twice: first, by revealing the fact of the proffer to the trial judge, and second, in redacting his post-arrest statement for use at trial.

■ Who said what, and when, is pivotal to our analysis of the first claimed violation of the agreement. Therefore, we must examine the events as they occurred. After the jury had been empaneled, but outside their presence, the trial judge disposed of some preliminary housekeeping matters. One of those matters, raised by the government, was its intended use of a portion of Garcia–Caban's post-arrest statement during the testimony of one of the agents who took the statement. Although not specifically identified at that time, the Assistant United States Attorney ("AUSA") was referring to that part of defendant's post-arrest statement wherein he admitted he knew the booster cable box Velasco placed in his trunk contained cocaine. The statement, according to the AUSA, was not hearsay under Rule 801(d)(2)(A) of the Federal Rules of Evidence. The AUSA assured the judge that questions about the statement would be asked and answered in such a way as to avoid any *Bruton* problems.[2] His purpose in raising the issue, he stated, was to alert the court that, should

co-defendant Velasco attempt to use any portion of it, the government would argue that the statement was inadmissible hearsay as to anyone but the United States.[3]

Garcia–Caban's counsel, however, asked that the entire statement come in under the completeness doctrine, Rule 106 of the Federal Rules of Evidence. In order to rule on the matter, the judge asked the parties to provide her with a transcript of the statement, with the portions each wanted admitted highlighted in a separate color. Just after Garcia–Caban's counsel explained to the judge that he wanted to use the entire post-arrest statement in his opening statement to the jury, the following exchange occurred:

[AUSA]: Judge, the other problem is that Felix Garcia–Caban recanted most of this statement. I mean after he gave the statement, we had a conference in some months later and he took large portions of it back.

THE COURT: And are you offering that, the post—.

[Garcia–Caban's counsel]: Well, the only thing that I object to, the prosecutor mentioning that, because that was a proffer to the government that there was—there was a promise to me that

---

1. The record on appeal does not contain the substance of either the proffer or the agreement between Garcia–Caban and the government. The parties are in accord, however, that the government agreed not to use the proffer against Garcia–Caban in its case, except for impeachment purposes.

2. In *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that when one of two defendants has made a confession which implicates his co-defendant, the Confrontation Clause of the Sixth Amendment requires that, at trial, any references to the non-testifying co-defendant must be redacted from the other's confession.

3. The colloquy between the court and the prosecutor on this issue was:

[AUSA]: But my point is this, Your Honor, we're going to introduce part of the statement. [Velasco's counsel] doesn't know—I'm not sure what his thinking is today, but I know he had made some reference to that statement in an earlier court appearance, and I just want to state our position, that the statement is admissible by us under 801(d)(2)(A) as a hear-

say exception rule. As to [Velasco], it's strictly hearsay, and I don't think any part of it is admissible. Well, for that matter as to [Garcia–Caban] as well.
Under 801(d)(2)(A)—
THE COURT: Well, what statement are we talking about?
[AUSA]: Statement of defendant.
THE COURT: Who's offering it?
[AUSA]: Well, we're offering a part of it.
THE COURT: Okay. And you're offering it as an admission against that particular defendant?
[AUSA]: Yes, Your Honor.
THE COURT: Right. You're not offering it against [Velasco]?
[AUSA]: No, [Velasco's attorney] made some allusion, at least, that he may want to introduce part of the statement....
What I'm stating is that as to anybody but the government, it's a hearsay statement. Unless they can show a hearsay exception that it falls under, it's inadmissible as to them. We're allowed to use it because it's an admission of a party opponent. I'm just stating that.
Record ("R.") 162, Transcript of Proceedings ("Tr.") on October 30, 1989, at 2–4.

that wouldn't be used against the defendant.

R. 162, at 7. Garcia–Caban claims the government first breached its agreement in this exchange by mentioning to the trial judge that at a conference some months later defendant recanted most of his statement.

There are two problems with defendant's argument. First, assuming the AUSA's statement was a use of the proffer, it cannot be construed as being used against the defendant in the government's case. It occurred outside the jury's presence during a legal argument to the judge concerning a statement the government intended to offer. But second, and more importantly, it was defense counsel himself, not the AUSA, who informed the trial judge that Garcia–Caban had made a proffer to the government. All the AUSA said was that defendant recanted most of his post-arrest statement at a conference sometime after giving his initial statement. Clearly, the prosecutor equivocated intentionally in order to avoid saying "proffer." He was successful. His statement to the judge was capable of several interpretations, only one of which was that defendant gave a proffer. Any ambiguity as to his meaning was resolved definitively when *defense counsel* said "that was a proffer." Defense counsel let the cat out of the bag, not the prosecutor.

■ Garcia–Caban's second asserted use by the government of his proffer was in its redaction of his post-arrest statement at trial. He relies on *United States v. McDaniel*, 482 F.2d 305 (8th Cir.1973), and *United States v. Pantone*, 634 F.2d 716 (3d Cir.1980), which cites *McDaniel*, for the proposition that the government impermissibly shaped its trial strategy and evidence as a direct result of knowledge of his proffer. Recall that the post-arrest statement

involved two persons not charged with Garcia–Caban as co-conspirators, Gonzales and Angel, as well as Lopez and Velasco, who were charged as co-conspirators. The government offered only that portion of Garcia–Caban's post-arrest statement wherein he admitted he was aware that the booster cable box placed in the trunk of his car contained cocaine. Garcia–Caban maintains that the prosecutor was aware that in his proffer he had recanted that portion of his post-arrest statement that concerned Lopez. Based on that knowledge, defendant continues, the prosecutor redacted his post-arrest statement for use at trial.

Once again, there are two problems with Garcia–Caban's argument. The first is his unwavering certainty that the government specifically offered only one statement contained in his post-arrest statement because of its knowledge of the contents of his proffer. In essence, he claims the government sculpted its case against him out of a lump of clay comprised of, among other evidence, both his post-arrest statement *and* his proffer. We disagree. The prosecutor needed only Garcia–Caban's post-arrest statement. And like a sculptor who discards material unnecessary to the final product, the prosecutor discarded the irrelevancies in defendant's post-arrest statement.

■ The final product the government sought was the introduction of sufficient evidence to prove all the elements of the crimes with which defendant was charged. One of those elements was Garcia–Caban's knowledge that he possessed cocaine. That could be, and was, established by offering his admission contained in his post-arrest statement. The remainder of the statement was not relevant to anything the government had to prove against him: it related to the conduct of others.[4] Two of

---

4. During argument on the issue of whether the entire statement should be admitted, the AUSA offered the court this same basis for paring down Garcia–Caban's post arrest statement:

   The portion that we are offering, Your Honor, relates only to this, and that is that he knew that that coke was in this box, the box sitting in our cart here, and that he saw it

   there and the kilo was inside the box. That's all we're offering.

   The defendant wants to introduce this story about Sal Lopez, Tony, Angel, which he's recanted, and it's our view, Your Honor, that anyone else's involvement really, as the Court has already instructed the jury, is irrelevant.

those others, Gonzales and Angel, were never found, if they indeed ever existed. Thus, inculpatory statements about them were not relevant to the case against Garcia–Caban. Likewise the statement concerning Lopez was irrelevant, inasmuch as the government dismissed the charges against him. That left Velasco, and *Bruton* bars mention of any statement Garcia–Caban made concerning him. As a result, Garcia–Caban's post-arrest statement was pared down to evidence relevant only to the government's case against *him*. That evidence was his admission that he knew the booster cable box placed in his car trunk contained cocaine. Although the remainder of Garcia–Caban's post-arrest statement may have been necessary to establish his theory of the case, as defense counsel argued to the trial judge, the government cannot be required to make defendant's case for him.[5]

■ The second problem with Garcia–Caban's argument is his reliance on *McDaniel*. McDaniel, president of a state bank, was under investigation by both federal and state authorities for irregularities regarding bank assets. He testified before a state grand jury, making self-incriminating statements. Under a state statute specifically relating to the crime under investigation, his testimony automatically was immunized. Unaware that McDaniel's testimony was immunized, the United States Attorney handling the federal investigation contacted the state authorities and requested a copy of McDaniel's state grand jury testimony. The state authorities, also unaware of the statutory immunity, obliged. The United States Attorney then read McDaniel's testimony. Less than three months later, the federal grand jury returned an indictment against McDaniel. After his conviction on the federal charges, McDaniel appealed, and argued that by reading his immunized state grand jury testimony, the federal prosecutor had used it impermissibly.

*McDaniel* was informed by *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), wherein the Supreme Court held that once a defendant has shown that he provided testimony in a state criminal matter under a grant of immunity, federal authorities investigating the same conduct have the burden of showing that they obtained their evidence against that defendant from an independent source. *Id.* at 460, 92 S.Ct. at 1664. Such a defendant "need only show that he

Now, Mr. Velasco is protected by Bruton, so he's out of the picture. And anyone else's involvement, these other people, even if they exist or not, is totally irrelevant to the proceedings before this Court. And that the—so our objection is on relevancy grounds for one. R. 149, Tr. at 98–99.

5. It would appear from defendant's arguments, both before the district court and this court, that he wanted to have his cake, eat it too, and not have to clean up the dishes afterwards. He sought to have the entire post-arrest statement admitted under the rule of completeness (*see infra* section I.B.), claiming its relevance was that it provided the basis of his theory of the case. R. 149, Tr. at 101. The AUSA pointed out that he proposed to do it "without putting the defendant on the witness stand, and in doing that he's getting the benefit of the statement that a defendant has recanted, taking back, without me having the opportunity to confront him with the fact that he took that statement back." R. 162, Tr. at 8–9. In response to the AUSA's statement that "[w]e are allowed to use the proffer for impeachment purposes," defense

counsel queried, "how can you impeach somebody that hasn't testified?" *Id.* at 10.

Defense counsel misapprehends the operation of Rule 806 of the Federal Rules of Evidence. That rule provides, in relevant part:

When a hearsay statement, or a statement defined in Rule 801(d)(2), (C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if the declarant had testified as a witness.

FED.R.EVID. 806. Although the quoted language does not specifically include statements defined in 801(d)(2)(A), the rule under which Garcia–Caban's statement came in, Rule 806 is not inapplicable: "The committee considered it unnecessary to include statements contained in rule 801(d)(2)(A) and (B)—the statement by the party-opponent himself *or* the statement of which he has manifested his adoption—*because the credibility of the party-opponent is always subject to an attack on his credibility* [sic]." NOTES OF THE COMMITTEE ON THE JUDICIARY, S.REP. No. 1277, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 7051, 7069 n. 28 (emphasis added).

testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate, independent sources." *Id.* The Eighth Circuit, in deciding *McDaniel*, concluded that even though the federal prosecutor offered

> voluminous reports, which ... may have afforded proof of an independent source of the evidence adduced at McDaniel's trial, such reports nevertheless fail to satisfy the government's burden of proving that the United States Attorney, who admittedly read McDaniel's grand jury testimony prior to the indictments, did not use it in some significant way short of introducing tainted evidence. Such use could conceivably include assistance in focusing the investigation, deciding to initiate prosecution, refusing to plea-bargain, interpreting evidence, planning cross-examination, and otherwise generally planning trial strategy.

*McDaniel*, 482 F.2d at 311 (citations omitted).

We have addressed the holding in *McDaniel* only twice, but neither time squarely. *See United States v. Shelton*, 669 F.2d 446, 464 n. 32 (7th Cir.), *cert. denied sub nom. Bledsoe v. United States*, 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 454 (1982) (distinguished in that defendant's statement was immunized "by the operation of an unusual provision in the Bankruptcy Act that extended immunity to statements without any showing of self-incrimination"); and *In the Matter of North American Inv. Co.*, 559 F.2d 464, 466 (7th Cir.1976) (cited generally for the proposition that "courts will not hesitate to dismiss an indictment where the prosecution fails to meet [its] burden" to show a legitimate independent source). Assuming for the sake of argument only that the prosecutor used Garcia–Caban's proffer to shape his trial strategy, we join three of our sister circuits and reject the reasoning

of *McDaniel.* *See United States v. Serrano*, 870 F.2d 1 (1st Cir.1989); *United States v. Mariani*, 851 F.2d 595 (2d Cir. 1988), *cert. denied*, 490 U.S. 1011, 109 S.Ct. 1654, 104 L.Ed.2d 168 (1989); and *United States v. Byrd*, 765 F.2d 1524 (11th Cir. 1985).

The burden on the prosecution to establish an independent source for evidence against a defendant is a heavy one indeed, but we decline to make it an impossible one to bear. We adopt the position of *Mariani*, and cases following, that the mere tangential influence that privileged information may have on the prosecutor's thought process in preparing for trial is not an impermissible "use" of that information. *United States v. Schwimmer*, 924 F.2d 443, 446 (2d Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 55, 116 L.Ed.2d 31 (1991) (citing *Mariani*, 851 F.2d at 600). *See also United States v. Rivieccio*, 919 F.2d 812, 815 (2d Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991); *Serrano*, 870 F.2d at 17–18. In this case, the prosecutor's independent source of information was defendant's post-arrest statement. It is inconceivable that anything contained in defendant's immunized proffer influenced the prosecutor to offer the defendant's admission at trial. And the possibility that the proffer influenced the prosecutor not to use the remaining portions of defendant's post-arrest statement is too remote, in light of our discussion above, and too tangential for us to conclude that the prosecutor breached his agreement with the defendant.

**B.**

Defendant Garcia–Caban next asserts that the trial judge committed reversible error when she ruled that the introduction of his entire post-arrest statement was not required under Rule 106 of the Federal Rules of Evidence.[6] Our case law interpreting Rule 106 requires that the evidence

---

**6.** The rule provides:
> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Fed.R.Evid. 106.

the proponent seeks to admit must be relevant to the issues in the case. Even then, a trial judge need admit only that evidence which qualifies or explains the evidence offered by the opponent. *United States v. Sweiss,* 814 F.2d 1208, 1211 (7th Cir.1987). The test is conjunctive. Once relevance has been established, the trial court then must address the second half of the test, and should do so by asking (1) does it explain the admitted evidence, (2) does it place the admitted evidence in context, (3) will admitting it avoid misleading the trier of fact, and (4) will admitting it insure a fair and impartial understanding of all of the evidence. *Id.* at 1211–12 (citing *United States v. Soures,* 736 F.2d 87, 91 (3d Cir. 1984), *cert. denied,* 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985)). Rule 106 decisions are left to the sound discretion of the trial court, and will not be disturbed absent abuse of that discretion. *United States v. Bigelow,* 914 F.2d 966, 971 (7th Cir.1990), *cert. denied sub nom. Vaughn v. United States,* —— U.S. ——, 111 S.Ct. 1077, 112 L.Ed.2d 1182 (1991).

In his brief on appeal, Garcia–Caban states that "[s]pecifically, the [trial] court found that although the redacted portions of the statement were relevant, they failed the test of Rule 106 because they did not 'explain the admitted portions' of the statement." Appellant's Brief at 18–19. This is not a precise characterization of the judge's ruling.[7] We do not view her statement as an express ruling that the unadmitted portions of defendant's statement were relevant. Rather, we view her ruling as a denial of defendant's motion based on the second prong of the *Sweiss* test. We hold, however, that the evidence fails both prongs, and that the judge, therefore, did not abuse her discretion by refusing to admit it.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401. A fact of consequence critical to the government's case was defendant's guilty knowledge that he possessed cocaine. The prosecution had the testimony of the surveillance team members who observed Garcia–Caban and Velasco look into Garcia–Caban's trunk after Velasco had placed the booster cable box in it, but that alone would not establish that Garcia–Caban knew he possessed cocaine. Thus, the government offered that portion of defendant's post-arrest statement wherein he stated, "The kilo of coke. [*Bruton* material deleted]. I opened the trunk [*Bruton* material deleted] there was a kilos [sic] there then I locked the trunk." R. 105, Statement at 4. There is nothing in the portions of defendant's post-arrest statement that he tried to admit under Rule 106 that make the fact of his guilty knowledge more probable or less probable. The unadmitted portions deal solely with the involvement of others, none of whom, with the exception of Velasco, were relevant to the government's case.[8] Indeed, the mention of those others might have confused or mislead the jury, which is in fact contrary to Rule 106's purpose to explain, qualify, or place the admitted portion in context.

Our facts are not unlike those in *United States v. Dorrell,* 758 F.2d 427 (9th Cir. 1985). There, the defendant made a post-arrest statement in which he confessed to the acts charged and explained his political and religious motivations for committing those acts. At his trial, Dorrell was pre-

---

**7.** The judge stated:

Reviewing that case as well as the case cited by the government, ... although I can understand the relevance argument you're making, although—in terms of the second portion of the test, that is that it explain the subject matter or the portion offered on the opponent, the government is only offering this limited portion dealing with what was contained in the box. They aren't offering any portion dealing with who he got it from or anything like that, which is the portion that essentially you want to impeach, that the whole thing was a lie, and I don't read the cases as broadly as you do. And looking at the facts that were presented in the specific cases that have been cited, I don't think it supports your position.
R. 149, Tr. at 104.

**8.** *See* our relevancy discussion, *supra* at pp. 1472–1473.

cluded from offering the necessity defense, after which the trial court granted the government's motion to redact from his statement his explanation for his conduct. All that was left was his confession. Holding that the complete text of Dorrell's post-arrest statement was not required under Rule 106, the Ninth Circuit stated that "removing Dorrell's explanation of the political and religious motivations for his actions did not change the meaning of the portions of his confession submitted to the jury. The redaction did not alter the fact that he admitted committing the acts with which he was charged." *Id.* at 435. Here, defendant argues that the unadmitted portions were necessary to explain his theory of the case.[9] But as in *Dorrell*, these portions were neither relevant, nor necessary to explain his statement that he knew there was cocaine in his trunk. *See also United States v. Smith*, 794 F.2d 1333, 1336 (8th Cir.), *cert. denied*, 479 U.S. 938, 107 S.Ct. 419, 93 L.Ed.2d 370 (1986) (Rule 106 inapplicable because unadmitted portions of defendant's post-arrest statement did not explain the facts disclosed through the admitted portion). We conclude, therefore, that the trial judge did not abuse her discretion to disallow the unadmitted portions of Garcia–Caban's post-arrest statement under Rule 106.

In sum, Garcia–Caban's challenges on appeal fail. His conviction is affirmed.

## II.

We turn now to Julio Velasco. His principal arguments on appeal challenge his sentence. The district court relied on two prior convictions, one from Illinois and one from New York, to sentence Velasco under the career offender provisions of the Sentencing Guidelines. He claims the Illinois conviction for possession of a controlled substance was not a felony conviction within the meaning of the career offender provisions, and thus should not have been considered by the district court. Because the government has confessed error on this point, we need not address it. We simply reverse and remand to the district court for resentencing. (In passing, we agree with the judgment of the prosecutor in the appraisal of error in Velasco's sentencing.)

Velasco argues that the district court also improperly relied on the New York conviction at his sentencing. He claims that conviction was the result of ineffective assistance of counsel, and that the district court failed to hold a hearing on the issue, in violation of his due process rights. Because we remand for resentencing, the district court can resolve the ineffective assistance issue in that proceeding.

Defendant raises, for the first time on appeal, the question of whether the mandatory minimum sentencing provisions under which he was sentenced violate due process. We will address this issue only cursorily. Mandatory minimum sentences are not unconstitutional. *Chapman v. United States*, —— U.S. ——, 111 S.Ct. 1919, 1928–29, 114 L.Ed.2d 524 (1991).

Velasco's remaining challenges to his sentence, and those to his conviction, are equally meritless. His conviction is affirmed, but his case remanded to the district court for resentencing in accordance with the above discussion.

## III.

For the foregoing reasons, the conviction of Felix Garcia–Caban is affirmed. The conviction of Julio Velasco also is affirmed. His sentence, however, is reversed and remanded.

---

**9.** Defendant's theory was that his "entire confession is a fabrication. That is, that on the date of his arrest [he] made up a confession in order to please or appease the agents." R. 149, Tr. at 101. Defendant was free to offer evidence to support his theory of the case, subject to impeachment, but we note that there is a further limitation on the rule of completeness, applicable in all cases, [which] arises when the prosecution seeks only to introduce a portion of the defendant's statement. There, the defendant still has the right to introduce portions of his statement. But, this right does not entitle the defendant to introduce portions of his statement that are neither explanatory of nor relevant to those portions of the statement introduced by the prosecution. *United States v. Smith*, 794 F.2d 1333, 1335 (8th Cir.), *cert. denied*, 479 U.S. 938, 107 S.Ct. 419, 93 L.Ed.2d 370 (1986).

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

CUDAHY, Circuit Judge, concurring.

I write separately only to note that at sentencing the prosecutor commented that the defendant's conduct was "a real-life example of how our country is awash in Colombian cocaine, distributed by Colombians." It is extremely unlikely that this remark affected the sentence pronounced by the very able and experienced trial judge. Nonetheless, this sort of inappropriate comment—suggesting that Colombians, because of the notoriety of their country of origin, should be punished more severely than others for similar crimes—seems to be creeping into a number of records that reach this court. This is an unworthy—and unnecessary—weapon in the prosecutorial armory, and its use should not be condoned.