2001 SD 144

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Michael KOEHN, Defendant and Appellant.**

No. 21659.

Supreme Court of South Dakota.

Argued April 25, 2001.

Reassigned Aug. 24, 2001.

Decided Dec. 12, 2001.

Mark Barnett, Attorney General, John M. Strohman, Assistant Attorney General, Pierre, for plaintiff and appellee.

Michael Abourezk of Abourezk Law Firm, Rapid City, for defendant and appellant.

KONENKAMP, Justice (on reassignment).

[¶ 1.] Defendant admitted to law enforcement officers that he had recently smoked marijuana. He consented to a urinalysis, which confirmed his marijuana use. Later, as the target of a drug investigation, he admitted under immunity before a grand jury that he used marijuana for medicinal purposes. Forewarned with this information, the prosecutor obtained an order prohibiting defendant from asserting a medicinal use defense at trial. The court denied defendant's motions to interrogate the prosecutor and to dismiss on the ground that the prosecution gained a tactical advantage with defendant's immunized testimony. Although the prosecutor used defendant's compelled testimony to forestall his medicinal use defense, we find no prejudice because such defense is not recognized in South Dakota.

## A.

[¶ 2.] On July 31, 1998, along a local highway in Fall River County, law enforce-

ment officers contrived a mock drug checkpoint. Positioned on the shoulder of the road, a large, lighted sign flashed the words "Drug Check Ahead—Drug Dogs in Use." Spotters hid in positions to observe vehicles going past the sign. At 4 p.m., a car approached the sign and stopped abruptly. It had one occupant. The driver reached toward the back of the vehicle, then made a throwing motion out the window. A spotter saw "an object skip across the road." The car pulled away from the sign. But it stopped again momentarily, the driver appearing to contemplate his next action. Then it drove off.

[¶ 3.] A short distance down the road, an officer pulled the car over after being alerted by radio to what the spotters had observed. Defendant, Dr. Michael Koehn, was the driver. After a brief conversation, Koehn was released. On the roadside where the object had been thrown, an agent found a small brown vial. A field test incorrectly registered negative for methamphetamine and positive for cocaine. Later, a chemist found that the vial contained a half-gram of methamphetamine.

[¶ 4.] On the same night, around midnight, four officers supplied with a search warrant went to Koehn's home. After explaining their presence, the agents requested that Koehn give them a urine sample. He responded, "OK, I can give you a sample of my urine." He asked what substance they were seeking to find. An officer said, "cocaine, controlled substance, methamphetamine." Koehn replied, "I don't use methamphetamine. Okay, but I did have a college buddy come out and visit me not so long ago and we smoked a joint."

[¶ 5.] Concerned that publicity might hurt his chances in his upcoming political campaign, Koehn asked if the presence of marijuana in his urine would result in charges. The chief investigator respond-

ed, "We're not gonna, you're not gonna be charged with anything like that, okay?" But a little later the investigator said, "Normally what we, what we do is if people have a little pot in their urine, you don't have any prior history or anything.... We don't charge that out and as a law enforcement officer I can't promise you that's gonna happen, you know, but...." After briefly speaking with his attorney wife, Koehn offered to give a blood sample to gain a faster result, but the officers thought a urine sample would be sufficient. At the state health lab, Koehn's urine tested negative for methamphetamine, but positive for marijuana.

[¶ 6.] A special prosecutor was appointed to handle Koehn's case. At the prosecutor's behest, Koehn was commanded to testify in a grand jury hearing. On two occasions in January 1999, he appeared before the grand jury and invoked his Fifth Amendment right against self-incrimination. The special prosecutor granted him use and derivative use immunity under SDCL 23A–14–29. Koehn was then compelled to testify about his marijuana use. He told the grand jury that he took marijuana medicinally for a condition he suffered. Later, the prosecutor moved the court to order discovery of any medical records that would "form the basis of any defense to be presented by the defendant." On the prosecutor's motion, the court prohibited Koehn from offering a medicinal use defense at trial.

[¶ 7.] Following further investigation, the grand jury indicted Koehn for possession of methamphetamine (SDCL 22–42–5), ingesting a substance to become intoxicated (SDCL 22–42–15), and possession of less than two ounces of marijuana (SDCL 22–42–6). The circuit court dismissed the indictment, however, when it was learned that the "chief investigator" and "others" were in attendance with the grand jury

while the case was under consideration, a violation of SDCL 23A–5–11. Five months later, the special prosecutor filed a complaint against defendant, and later an information, charging him with the same offenses as in the former indictment.

[¶ 8.] At trial, Koehn was found guilty of possession of marijuana and not guilty of the other two charges. He was given a thirty-day jail sentence, suspended, and a fine of $250, plus court costs. He raises the following issues on appeal: (1) whether the state used his immunized testimony in violation of his constitutional rights; (2) whether his statements were obtained in violation of Miranda v. Arizona; (3) whether he voluntarily consented to the urine sample taken at his residence; and (4) whether the testing of his urine for THC (tetrahydrocannabinol) was outside the scope of the search warrant.[1]

### B.

### Prosecutor's Use of Immunized Testimony

■ [¶ 9.] The Fifth Amendment prohibits the government from compelling people to testify against themselves. In upholding a federal use immunity statute, the United States Supreme Court explained the limits of Fifth Amendment protection:

> The privilege [against self-incrimination] has never been construed to mean that one who invokes it cannot subsequently be prosecuted. Its sole concern is to afford protection against being forced to give testimony leading to the infliction of "penalties affixed to … criminal acts." Immunity from the use of compelled testimony, as well as evidence derived

directly and indirectly therefrom, affords this protection.

Kastigar v. United States, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212, *reh'g denied,* 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972) (internal citations omitted). Any grant of immunity, the Court ruled, should leave the witness and the government "in substantially the same position as if the witness had claimed his privilege." *Kastigar,* 406 U.S. at 457, 458–59, 92 S.Ct. at 1663, 1664, 32 L.Ed.2d 212. Testimony compelled under a grant of immunity may not be used against the witness in *any* respect. *Id.,* 406 U.S. at 453, 92 S.Ct. at 1661, 32 L.Ed.2d 212. *Kastigar* disallows any attempt to "obtain leads, names of witnesses, or other information not otherwise available that might result in a prosecution." *Id.,* 406 U.S. at 459, 92 S.Ct. at 1664, 32 L.Ed.2d 212. The prosecutor's burden is to prove "that all of the evidence it proposes to use was derived from legitimate independent sources." *Id.,* 406 U.S. at 461–62, 92 S.Ct. at 1665, 32 L.Ed.2d 212.

■ [¶ 10.] South Dakota's immunity statute is similar to the federal statute the Supreme Court considered in *Kastigar.* Our statute provides in part:

> No testimony or other information compelled under an order or a grant of immunity, or any information directly or indirectly derived from such testimony, may be used against the witness in any criminal proceeding, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

---

1. As we conclude that the circuit court did not err in finding that defendant voluntarily consented to give a urine sample and voluntarily spoke to the officers in a noncustodial setting, we deem defendant's Issues 2, 3, and 4 nonmeritorious. The search warrant was not executed and defendant was apparently unaware of its existence on the night in question.

SDCL 23A–14–29. As the parties agree that the *Kastigar* analysis applies here, we will examine how various federal courts interpret that decision. Because we are interpreting our own statute, however, we do not consider ourselves bound by any particular federal circuit's interpretation. Under *Kastigar*, a defendant "need only show that he or she testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence was derived from legitimate independent sources." *Kastigar*, 406 U.S. at 461–62, 92 S.Ct. at 1665, 32 L.Ed.2d 212. This burden imposes on the prosecution an "affirmative duty to prove that the evidence it proposes to use is derived from legitimate source[s] wholly independent of the compelled testimony." *Kastigar*, 406 U.S. at 460, 92 S.Ct. at 1665, 32 L.Ed.2d 212, *citing Murphy v. Waterfront Comm'n*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). The prosecutor's burden must be established by a preponderance of the evidence. *See* John A. Darrow, *White Collar Crime: Fifth Survey of Law—Immunity*, 26 AmCrimLRev 1169, 1179 & n.62 (1989).

[¶ 11.] Although the most common time to hold a *Kastigar* hearing is before trial, a court may conduct the hearing before, during, or after trial, or in a combination these times. *See United States v. De Diego*, 511 F.2d 818, 823–24 (D.C.Cir.1975). Whether the prosecutor made use of immunized grand jury testimony is an issue of fact; accordingly, a court must make factual findings on the independent nature of the evidence. *United States v. Rinaldi*, 808 F.2d 1579, 1584 (D.C.Cir.1987). On review, the circuit court's findings will not be reversed unless they are clearly erroneous. *United States v. Garrett*, 849 F.2d 1141, 1142 (8th Cir. 1988); *United States v. Gallo*, 863 F.2d 185, 190 (2d Cir.1988), *cert. denied*, 489 U.S. 1083, 109 S.Ct. 1539, 103 L.Ed.2d 843 (1989).

[¶ 12.] When a court concludes that a prosecutor improperly used immunized testimony given before a grand jury, generally the remedy for the violation is the suppression of the tainted evidence at trial, not a dismissal of the charges. *United States v. Rivieccio*, 919 F.2d 812, 816 (2d Cir.1990). *But see United States v. McDaniel*, 482 F.2d 305, 312 (8th Cir.1973) (vacating conviction because of prohibited use of immunized testimony). However, if the prosecution fails to show that its case rests on evidence independent of a defendant's immunized testimony, then dismissal is the proper remedy. *State v. Peters*, 637 N.E.2d 145, 150 (Ind.App.1994).

[¶ 13.] In its pretrial *Kastigar* hearing, after considering the testimony of the chief investigator, the circuit court concluded that the State proved, "by a preponderance of the evidence, that the evidence it will use for the prosecution was derived from legitimate sources wholly independent of the defendant's immunized testimony." The court also found that the State's proposed evidence was "not in any way tainted, directly or indirectly, as a result of the defendant's immunized testimony." Nothing in the record suggests that these findings were erroneous.

[¶ 14.] Notably, although Koehn was charged with several offenses, he was convicted of only one: possession of less than two ounces of marijuana, a misdemeanor. It is this conviction we must review for constitutional and legal error. The evidence supporting the conviction was Koehn's voluntary admission on the night in question: "I did have a college buddy come out and visit me not so long ago and we smoked a joint." He consented that night to give a urine sample. The resulting analysis revealed that he had marijuana residue in his system, confirming he

had recently ingested the substance. This evidence, sufficient in itself to convict Koehn for marijuana possession, was obtained long before the grand jury proceedings, where his testimony was given under immunity.

[¶ 15.] In his appellate brief, Koehn "concedes that no evidence presented at trial appears to have been derived from [his] immunized testimony." On the contrary, Koehn insists that his conviction should be set aside because of the "nonevidentiary" use of his immunized testimony. *See McDaniel*, 482 F.2d 305. In *McDaniel*, the court prohibited "all prosecutorial use" of coerced statements, "not merely that which results in the presentation of evidence before the jury." *Id.* at 311. A majority of courts reject the per se *McDaniel* rule prohibiting all nonevidentiary use of immunized testimony.[2]

[¶ 16.] Even if we were to adopt the minority view that any tangential influence privileged information may have on the prosecutor's trial preparation is impermissible, it would avail Koehn nothing here. The nonevidentiary use Koehn complains of was the special prosecutor's knowledge gained from the immunized testimony that Koehn "used marijuana for medicinal purposes." Thus, according to Koehn, the prosecutor "was able to preempt this defense by filing a pretrial motion with the trial court to prevent defendant from introducing any evidence that defendant used marijuana for medicinal purposes." Koehn fails to explain what legal basis he would have had to maintain a "medicinal use" defense to possession of marijuana. Most states refuse to recognize such a defense for those who self-prescribe illegal substances.[3] South Dakota grants no authority, by statute or precedent, for medicinal use of marijuana.

[¶ 17.] Koehn protests the unorthodox procedures adopted by the special prosecutor. As the target of the investigation, Koehn was forced to give an official statement against himself. Even the South Dakota Attorney General's office acknowledges that its handling of this appeal "should not be viewed by this Court as an approval of the procedures involved in the grand jury investigation in this case ." Perhaps, as Koehn suggests, the special prosecutor sought to use his immunized testimony in an attempt to build a stronger case against him. If that was the intent, improper though it may have been, it was unsuccessful. In the end, there was no evidentiary use of immunized testimony at trial, as Koehn concedes.

**2.** *See United States v. Velasco*, 953 F.2d 1467, 1474 (7th Cir.1992) ("The burden on the prosecution to establish an independent source for evidence against a defendant is a heavy one indeed, but we decline to make it an impossible one to bear."); *United States v. Serrano*, 870 F.2d 1, 17 (1stCir.1989) ("Such an approach amounts to a per se rule that would in effect grant a defendant *transactional* immunity once it is shown that government attorneys or investigators involved in the prosecution were exposed to the immunized testimony."); *United States v. Mariani*, 851 F.2d 595, 600–01 (2d Cir.1988), *cert. denied*, 490 U.S. 1011, 109 S.Ct. 1654, 104 L.Ed.2d 168 (1989); *United States v. Crowson*, 828 F.2d 1427, 1431–32 (9th Cir.1987), *cert. denied*, 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988); *United States v. Schmidgall*, 25 F.3d 1523, 1528–29 (11th Cir.1994).

**3.** *See State v. Poling*, 207 W.Va. 299, 531 S.E.2d 678 (2000) (medical necessity unavailable as affirmative defense to marijuana charge); *Carlson v. State*, 240 Ga.App. 589, 524 S.E.2d 283 (1999) (defendant not entitled to have witness testify about the beneficial use of marijuana for certain ailments in support of defense of justification and not entitled to justification defense instruction); *Murphy v. Commonwealth*, 31 Va.App. 70, 521 S.E.2d 301 (1999) (necessity defense unavailable to charge of possession of marijuana); *Seeley v. State*, 132 Wash.2d 776, 940 P.2d 604 (1997) (no constitutional right to use marijuana for medical treatment).

[¶ 18.] Koehn next contends that the trial court erred in not allowing him to examine the special prosecutor to ascertain his "motives" and to explore any use he may have made of the immunized testimony. We believe that the appropriate focus of a challenge on self-incrimination grounds should be on the direct and indirect evidentiary uses of immunized testimony, rather than on nonevidentiary matters.[4] *United States v. Byrd,* 765 F.2d 1524, 1529–31 (11th Cir.1985) (disagreeing with *United States v. Semkiw,* 712 F.2d 891 (3d Cir.1983), and *McDaniel,* 482 F.2d 305). "The government is not required to negate all abstract 'possibility' of taint." *Id.* at 1529. Furthermore, even if immunized testimony was used, a conviction may be upheld on a finding that the use of such tainted evidence was harmless beyond a reasonable doubt. *Schmidgall,* 25 F.3d at 1529. Even constitutional error can be harmless. *State v. Stanga,* 2000 SD 129, ¶ 20, 617 N.W.2d 486, 491.

[¶ 19.] Although the special prosecutor used Koehn's immunized testimony concerning his medicinal use of marijuana to preclude this defense at trial, given Koehn's admission and his positive urine test, such use was harmless beyond a reasonable doubt.[5] It is not our role to overturn improper procedures if they produce no effect on the outcome. We uphold the circuit court's finding that the State made no evidentiary use of Koehn's grand jury testimony, either directly or indirectly, and that the conviction was based on evidence derived from a legitimate source wholly independent of his immunized testimony.

[¶ 20.] Koehn's misdemeanor conviction for possession of marijuana is affirmed.

[¶ 21.] GILBERTSON, Chief Justice, and MILLER, Retired Chief Justice, concur.

[¶ 22.] SABERS, and AMUNDSON, Justices, dissent.

SABERS, Justice (dissenting).

[¶ 23.] I join in Justice Amundson's dissent for all of the reasons stated therein.

[¶ 24.] In addition, I condemn the tactics of the special prosecutor in "targeting" the Defendant and "compelling" his testimony against himself in violation of the letter and spirit of the Constitutions of the United States and South Dakota. To this extent, I differ with McDaniel's statement that "we cast no reflection upon the integrity or motives of [the special prosecutor]...."

[¶ 25.] Although the conduct of the Defendant is incredible considering his position in the community, two wrongs do not make a right. To make things worse, the trial court judge prevented the defense from questioning the special prosecutor and the Attorney General's Office supported the conduct, despite its admission that it is not "our preferred practice."

AMUNDSON, Justice (dissenting).

[¶ 26.] I respectfully dissent on issue one.

---

4. *See also* Humble, *Nonevidentiary Use of Compelled Testimony: Beyond the Fifth Amendment,* 66 TexLRev 351, 355–56 (1987) ("[N]either the immunity statute nor the fifth amendment requires the government to prove that it made no nonevidentiary uses of the defendant's compelled testimony.")

5. . *See, e.g., Serrano,* 870 F.2d at 16; *Byrd,* 765 F.2d at 1529 n.8 (use of immunized testimony does not result in dismissal if found to be harmless beyond a reasonable doubt); *United States v. Gregory,* 730 F.2d 692, 698 (11th Cir.1984) (same), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985); *United States v. Beery,* 678 F.2d 856, 860 n.3, 863 (10th Cir.1982) (same).

[¶ 27.] On June 19, 2000, the trial court held a *Kastigar* hearing to determine whether the State's evidence to be used against Koehn was derived directly or indirectly from Koehn's immunized testimony. After hearing testimony from the leading investigator, DCI Agent Beyer, the trial court held that "there was no evidentiary advantage to the prosecution contained in the immunized testimony of Mr. Koehn." The trial court further found that the evidence to be used was "derived from legitimate sources wholly independent of the Defendant's grand jury testimony." [6]

[¶ 28.] The State and Koehn agree that our inquiry into the propriety of the State's use of immunized testimony is controlled by *Kastigar*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212. In *Kastigar*, the United States Supreme Court held that the grant of immunity by the government must be coextensive with the privilege against self-incrimination under the Fifth Amendment. 406 U.S. at 453, 92 S.Ct. at 1661, 32 L.Ed.2d 212. In so holding, the Court announced that the government has a "heavy burden" of proving that the evidence to be used by the government was not "directly or indirectly" procured from the immunized testimony.

[¶ 29.] Relying on *Kastigar*, the Eighth Circuit Court of Appeals added:

[T]o enforce the statutory prohibition on any use if the immunized testimony and adequately protect the witness's fifth amendment privilege, an immunized witness subsequently prosecuted need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources. This burden, the Court explained, provides a very substantial protection; it is not limited to a negation of taint, rather it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.

*United States v. Garrett*, 797 F.2d 656, 659–60 (8th Cir.1986) (internal citations omitted). Therefore, since there is no dispute that Koehn's testimony was compelled, and he was then granted immunity, the State had a substantial burden in showing that the evidence to be used in Koehn's prosecution not only was free from taint, but also that it came from wholly legitimate sources.

[¶ 30.] At the *Kastigar* hearing, Agent Beyer stated that he used Koehn's immunized testimony to contact potential witnesses. Further, when asked if it would be helpful to know what the defense will be, Agent Beyer answered: "I suppose. If you are playing in a football game and you know what play is coming, I suppose that helps."

[¶ 31.] In addition, Koehn called the special prosecutor, Rod Lefholz, at the *Kastigar* hearing to determine whether the prosecution had procured evidence to be used at trial stemming from Koehn's immunized testimony. The trial court prevented Koehn from calling Lefholz as a witness. Koehn, however, made an offer of proof where he would ask Lefholz questions relating to his preparation for trial and the grand jury testimony. In other words, Koehn attempted to delve into Lefholz' state of mind to determine what ef-

---

**6.** A review of the Findings of Fact made by the trial court does not disclose specifically the independent sources claimed by the prosecution. Rather, the court generally found, based on the testimony of one witness and the transcript of the grand jury proceeding, that all evidence to be used against Koehn came from legitimate sources.

fect the grand jury testimony had on his handling of the case.[7]

[¶ 32.] In interpreting *Kastigar*, there is a split of authority among the federal circuits in defining the proper use of evidence derived from immunized testimony. In the Eighth Circuit, the case of *McDaniel*, 482 F.2d 305, controls the scope of immunized testimony in federal court where "any use" taints the evidence used by the prosecution. In the Seventh Circuit, the *Velasco* case, 953 F.2d 1467, takes a narrower view than *McDaniel* on the proper use of immunized testimony. In *McDaniel*, the Eighth Circuit court held that immunity protection includes "*all prosecutorial use of the testimony*, not merely that which results in the presentation of evidence before the jury." 482 F.2d at 311 (emphasis added). While the testimony adduced on cross-examination at the *Kastigar* hearing could be characterized as "non-evidentiary" rather than evidentiary, the Eighth Circuit does not draw a distinction between the two. As described above, the State made motions in limine and discovery motions based on Koehn's grand jury testimony. The State also interviewed a witness that it gained knowledge of from the immunized testimony. Such use of testimony, under *McDaniel*, is clearly forbidden.[8] The State has offered no evidence to the contrary.

[¶ 33.] The State urges this Court to follow the *Velasco* case. In rejecting *McDaniel*, the *Velasco* court stated that "the mere tangential influence that privileged information may have on the prosecutor's thought process in preparing for trial is not an impermissible 'use' of that information." 953 F.2d at 1474 (citations omitted). Therefore, according to *Velasco*, a prosecutor may read the grand jury transcript, be involved in the grand jury proceeding itself, and even file motions it would not have otherwise have filed but for the immunized testimony. It is important to note that the *Velasco* decision relies upon *Mariani*, 851 F.2d 595 for departing from *McDaniel*. In *Mariani*, however, the Second Circuit subscribed to the notion that "the government bears a heavy

---

7. For example, the record reflects that the special prosecutor made a pre-trial discovery motion to procure Koehn's medical records. During the grand jury testimony, Koehn admitted that he suffered from a bipolar mental condition, which is why, he explained, he smoked marijuana. While the significance of the medical records themselves may be of little value, it does show that the immunized testimony had some effect on how the prosecutor was handling the case. Like the *McDaniel* case, "we cast no reflection upon the integrity or motives of the [special prosecutor].... Thus, although he asserts he did not use [Koehn's] testimony in any form, we cannot escape the conclusion that the testimony could not be wholly obliterated from the prosecutor's mind in preparation and trial of the case." 482 F.2d 312.

8. It is important to note that special prosecutor Lefholz conducted the grand jury proceeding and DCI agent Beyer was present to hear the grand jury testimony of Koehn. In *McDaniel*, the Circuit Court found a violation of Koehn's Fifth Amendment privilege due merely from the prosecutor reading the defendant's immunized testimony.

> [O]nce the subject matter was touched upon in the privileged testimony, and the prosecutor had read it, he could have used it in a variety of ways in this criminal prosecution. The possibility of such use, and the impossibility of clearly showing that the use did not occur calls for a holding in this case that the defendants were denied the constitutional protection that their silence would have given them.

*McDaniel*, 482 F.2d at 311–12 (citing *United States v. Dornau*, 359 F.Supp. 684 (S.D.N.Y. 1973)). Under *McDaniel*, the fact that Lefholz and Beyer had read the grand jury testimony alone is sufficient for this Court to find a *Kastigar* violation. If we were to follow *McDaniel*, the examples of the special prosecutor's use of immunized testimony, however tangential, only support our decision to reverse the trial court.

burden to show that the evidence it uses in the subsequent prosecution was not derived *directly or indirectly* from the witness's immunized testimony" and "[t]o sustain its burden ... the government must prove that it 'relied solely on evidence from legitimate sources.'" 851 F.2d at 600 (emphasis added).

[¶ 34.] The State, through the lone testimony of Agent Beyer, failed to show that it relied solely on evidence from legitimate sources. The entire *Kastigar* hearing revolved around Agent Beyer's investigation of Koehn's alleged drug use without any mention of whether the information used in his investigation came from legitimate sources. The State presented no evidence of legitimate sources at the *Kastigar* hearing, therefore, under either *McDaniel* or *Velasco*, the State in this case failed to meet its heavy burden of proving Koehn's immunized testimony was not directly or indirectly used in his subsequent criminal trial. Based on this record, the State failed to carry its heavy burden under either of the aforementioned decisions.

[¶ 35.] As it is clearly evident that the State used Koehn's immunized testimony, additional proceedings would be futile. Like the *McDaniel* case, "the unusual circumstances attending the controversy renders the government's burden of proof in this case virtually undischargeable."

[¶ 36.] For these reasons, I would reverse and remand, vacating Koehn's conviction with instructions to dismiss the case.