2003 SD 131

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Matthew DUCHENEAUX, Defendant and Appellant.**

**No. 22776.**

Supreme Court of South Dakota.

Argued Oct. 6, 2003.

Decided Nov. 5, 2003.

Lawrence E. Long, Attorney General, John M. Strohman, Assistant Attorney General, Pierre, Attorneys for plaintiff and appellee.

Darren Magee, Public Defender's Office, Sioux Falls, Attorney for defendant and appellant.

SABERS, Justice.

[¶ 1.] Matthew Ducheneaux was charged with possession of marijuana. The magistrate judge ruled that Ducheneaux was entitled to use the affirmative defense of necessity under SDCL 22–5–1. The State appealed the decision to the circuit court. The circuit court reversed and Ducheneaux attempted to appeal to this Court. After this Court dismissed his appeal, Ducheneaux was tried and convicted by a jury in magistrate court. The circuit court denied his appeal and Ducheneaux appeals. We affirm.

## FACTS

[¶ 2.] On July 15, 2000, Officer Vinson Weber of the Minnehaha County Police Reserve Unit was patrolling the Yankton Trail Park in Sioux Falls during the city's annual "Jazz Fest." As Officer Weber rode his bicycle on the bike path, he noticed a cloud of smoke and an odor of marijuana. Officer Weber testified that he observed Ducheneaux passing a marijuana cigarette to another man while exhaling smoke. When questioned, Ducheneaux informed the officer that he had a prescription for the marijuana and handed Officer Weber a pill bottle labeled as a prescription for Ducheneaux for the drug Diazepam. The bottle contained pills and marijuana cigarettes. Ducheneaux was arrested and charged under SDCL 22–42–6 with possessing less than two ounces of marijuana.

[¶ 3.] Ducheneaux is 36 years old and was rendered quadriplegic by an automobile accident in 1985. His paralysis is nearly complete except that he has some movement in his hands. Ducheneaux suffers from a condition called spastic paralysis, which causes him to experience spastic tremors and pain throughout his body. His condition is a result of his quadriplegia and is therefore incurable. The only option for Ducheneaux is to treat the symptoms.

[¶ 4.] Ducheneaux testified that he has not had success with traditional drug therapies. The magistrate noted that other drugs have "created intolerable and possible fatal side-effects." Among the legal prescription drugs sometimes used for spastic paralysis is Marinol, a synthetic tetrahydrocannabinol (THC). THC is the essential active component in marijuana. Although Ducheneaux has a prescription for Marinol, he feels that it produces dangerous side effects without the benefits of natural marijuana.

[¶ 5.] Ducheneaux testified that he was authorized in 1993 to obtain natural marijuana from the federal government through the Investigational New Drug (IND) program. Through this mechanism, the federal government currently allows eight individuals nationwide to access marijuana for medical purposes. Ducheneaux testified that in order to obtain the marijuana, he needed to find a local pharmacy willing to fulfill the responsibility of storing, securing and dispensing the federally issued marijuana. He claims he was unable to find such a pharmacy, but does not specify his efforts in that respect. There is no evidence in the record other than Ducheneaux's testimony to verify his authorization through the IND. His claim is questionable given the fact that the IND

program was suspended and ceased taking applications in 1992.[1] *Kuromiya v. U.S.,* 78 F.Supp.2d 367 (E.D.Pa.1999) (describing termination of the individual IND program). Regardless, his alleged authorization through the IND compassionate use program is irrelevant because the marijuana in his possession was not issued to him through that program.

[¶ 6.] Based on his determination that all of his legal options were unacceptable, Ducheneaux decided to illegally purchase and use whole marijuana instead.

[¶ 7.] The magistrate ruled that the affirmative defense of necessity under SDCL 22–5–1 was available to Ducheneaux.[2] The circuit judge reversed the magistrate and Ducheneaux petitioned this Court for an intermediate appeal, but the petition was not accepted. Thereafter, a jury trial was held in magistrate court and Ducheneaux was convicted of possession of two ounces or less of marijuana.

[¶ 8.] Ducheneaux appeals his conviction raising one issue:

Whether the affirmative defense of necessity under SDCL 22–5–1 encompasses a defense of medical necessity against a charge of possession of marijuana.

We affirm.

## STANDARD OF REVIEW

[¶ 9.] Statutory construction is a question of law which we review de novo.

*Christensen v. Carson,* 533 N.W.2d 712, 714 (S.D.1995) (additional citation omitted). "We determine the intent of a statute from the statute as a whole, from its language, and by giving it its plain, ordinary and popular meaning." *Id.* Application of a statute to particular facts is also a question of law which we review de novo. *State v. Talarico,* 2003 SD 41, ¶ 10, 661 N.W.2d 11, 16 (citations omitted).

[¶ 10.] **WHETHER THE AFFIRMATIVE DEFENSE OF NECESSITY UNDER SDCL 22–5–1 ENCOMPASSES A DEFENSE OF MEDICAL NECESSITY AGAINST A CHARGE OF POSSESSION OF MARIJUANA.**

[¶ 11.] SDCL 22–5–1 provides:

A person may not be convicted of a crime based upon conduct in which he engaged because of the use or threatened use of unlawful force upon him or upon another person, which force or threatened use thereof a reasonable person in his situation would have been lawfully unable to resist.

The defense of necessity is an affirmative defense and as such, "requires the defendant to present credible evidence in its support prior to submission to the trier of fact." *State v. Bowers,* 498 N.W.2d 202, 205–206 (S.D.1993) (citing *State v. Rome,*

---

1. The eight patients still receiving medicinal marijuana are apparently "grandfathered" in because they were receiving the drug at the time the program was suspended.

2. A motion hearing was scheduled on March 8, 2001, at which the magistrate assumed Ducheneaux would be making an offer of proof regarding the necessity defense. Ducheneaux called no witnesses and offered no evidence. The State stipulated to Ducheneaux's physical condition, but not to the medical benefits of marijuana or to the fact that Ducheneaux could only obtain relief through use of marijuana.

The magistrate made many findings of fact regarding Defendant's need to use marijuana, the toxic effect of legal prescription drugs and the alleged advice from Ducheneaux's doctor that he try marijuana. These findings were not supported on the record before the magistrate. It appears that all of the facts underlying the magistrate's findings came from a brief submitted by Ducheneaux's counsel. The only testimony regarding Defendant's medical condition, the toxicity of prescription drugs and his need for marijuana therapy came from Defendant at his trial.

452 N.W.2d 790 (S.D.1990)); SDCL 22–1–2(3). We have established a standard for determining whether a necessity defense under SDCL 22–5–1 is submissible to a jury:

> [T]he defense of necessity [is] properly raised when the offered evidence, if believed by the jury, would support a finding by them that the offense ... was justified by a reasonable fear of death or bodily harm so imminent or emergent that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the public injury arising from the offense committed[.]

*State v. Boettcher*, 443 N.W.2d 1, 2 (S.D. 1989) (citing *State v. Miller*, 313 N.W.2d 460, 462 (S.D.1981) (additional citations omitted)). The analysis requires the court to "examine [ ] the circumstances surrounding the crime based on a reasonable person standard." *Miller*, 313 N.W.2d at 462. In order to submit the defense to the jury, the defendant must show that he had a "reasonable fear of death or bodily harm imminent or emergent" at the time he engaged in the unlawful act. *Boettcher*, 443 N.W.2d at 2 (citing *State v. Watkins*, 316 N.W.2d 627 (S.D.1982)).

■ [¶ 12.] Ducheneaux argues that he can predict when an attack or spasm is coming and that a jury could reasonably find that his fear of such an attack is reasonable. He contends that his concern over the health consequences of traditional treatments also amounts to "fear of imminent or emergent bodily harm." Based on these fears, Ducheneaux asserts that a jury could reasonably find that his possession of marijuana was justified under SDCL 22–5–1 because he had done everything in his power to control his condition and maintain his health and smoking marijuana was his only remaining option.

[¶ 13.] While Ducheneaux's arguments are somewhat compelling in light of our interpretive language, they fail when compared to the plain language of the statute. Regardless of how reasonable his actions may have been, it is still necessary that the actions fall within the scope of the statute. If his unlawful behavior is not encompassed by the statute, then the magistrate erred as a matter of law in ruling that the defense was available. The statute requires a showing that the defendant committed the crime "because of the use or threatened use of unlawful force upon him or upon another person," and that the he was "lawfully unable to resist." SDCL 22–5–1. The circumstances of this case do not meet these elements.

[¶ 14.]Ducheneaux cannot show that he engaged in the crime because of the "use or threatened use of unlawful force upon him." The only "force" threatened or used in this situation is that which his medical condition forces his muscles to exert. To find that his spastic paralysis constitutes "unlawful force" strains the language of the statute. The statutory language clearly implies force or threat of force by another actor and requires that the force or threat of force be unlawful. *See Bowers*, 498 N.W.2d at 206 (abortion protestors denied necessity defense because abortion does not constitute unlawful force). Every South Dakota case in which this Court has found SDCL 22–5–1 applicable involves force from an outside actor. *See e.g. Boettcher*, 443 N.W.2d at 3 (defense available where evidence, if believed by the jury, would show that defendant had a fear of imminent bodily harm to her child in the form of sexual abuse); *Miller*, 313 N.W.2d at 462 (evidence that inmate feared being harmed in prison was sufficient to allow him to assert the defense); *State v. Rome*, 452 N.W.2d 790, 792–793 (S.D.1990) (indications that child was being abused was sufficient to permit justification defense by

parent against a child-napping charge). Furthermore, even assuming he has shown the requisite force, Ducheneaux cannot show that any such force was "unlawful." Laws govern the actions or inactions of people, not medical conditions. *See* SDCL 22–1–8 ("No act or omission shall be deemed criminal or punishable except as prescribed or authorized by this title or by some other statute of this state."). It would be a strained interpretation of SDCL 22–5–1 to hold that its language supports the construction that a medical condition can exert unlawful force against a person.

[¶ 15.]Ducheneaux also fails to show that the "force" at issue was one which he was "lawfully unable to resist." Although he testified that traditional medications have unwanted and detrimental side effects, Ducheneaux had legal means to combat the pain and spasms accompanying his condition. As noted at his trial, his doctors prescribed several medications for his condition, including Marinol, the legal form of THC, and valium. His belief that his alternative treatments are inferior is insufficient justification for choosing an illegal remedy. *See e.g. State v. Tate*, 102 N.J. 64, 75, 505 A.2d 941, 946–947 (1986) (noting that, "[s]ince a legal alternative was available, the illegal alternative was not necessary, and the resort to it was not justified").

[¶ 16.]Clearly, this is not the typical possession of marijuana case. The Court is not unmoved by Matthew Ducheneaux's circumstances. However, the Court is bound to act within the realm of its author-

ity. We cannot judicially graft language into SDCL 22–5–1 to permit it to be used in these circumstances. The question whether a defense of necessity applies against a possession of marijuana charge when the marijuana is alleged to be medically necessary is legislative. The Legislature has clearly spoken on the issue of marijuana possession in SDCL 22–42–6 which provides in part, "*[n]o person* may knowingly possess marijuana." (Emphasis supplied.) The language is unequivocal and therefore, whether such a defense is allowed in South Dakota remains a question of policy best answered by the State Legislature.[3] The Legislature has given no indication that it recognizes this defense under SDCL 22–5–1 and the Court cannot take it upon itself to judicially legislate the defense.

[¶ 17.] Moreover, we have previously noted, "South Dakota grants no authority, by statute or precedent, for medicinal use of marijuana." *State v. Koehn*, 2001 SD 144, ¶ 16, 637 N.W.2d 723, 728. Ducheneaux argues that *Koehn* is not controlling because the presence of a medical necessity defense was not the primary issue in that case. Even assuming that the Court was merely writing dicta, there is still nothing in South Dakota law which allows for a medical necessity defense in these circumstances.

[¶ 18.] Ducheneaux devoted a substantial portion of his brief to cases discussing creation of a common law affirmative defense of medical necessity. However, at oral argument, Ducheneaux's attorney indicated that he relied purely on the neces-

---

3. Although not determinative, it is noteworthy that on at least two occasions, proposals to create a medical necessity defense for marijuana possession were deferred in the South Dakota Legislature until the forty first day. *See* Senate Bill 73, 76th Session, South Dako-

ta Legislature, 2001; House Bill 1120, 76th Session, South Dakota Legislature, 2001. In the South Dakota Legislature, deferring a bill until the forty-first day of session is tantamount to tabling the bill.

sity statute under SDCL 25–5–1 and not on this common law defense. Therefore, we need not reach the issue whether South Dakota common law supports a medical necessity defense. Because SDCL 22–5–1 does not support an interpretation that would allow for its use in these circumstances, we affirm.

[¶ 19.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.